Filed 10/29/20  In re I.L. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re I.L. et al., Persons Coming Under the Juvenile Court Law. | B305125 |
| | (Los Angeles County Super. Ct. No. 18CCJP00252B-F) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| Jenny O., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Peter A. Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Jenny O. (Mother) and James L. (Father) have five children together: I.L., J.L., C.L., Ge.O., and Gi.O. (collectively, the Minors).[1] The juvenile court assumed dependency jurisdiction over all five Minors—sustaining six dependency petition counts against Mother and five against Father—and removed the Minors from Mother's care. Mother challenges only two of the counts against her, arguing substantial evidence does not support them; Father does not appeal any of the findings against him. Mother additionally argues the juvenile court erred in ordering the children removed from her custody. We consider (1) whether there is any reason to reach Mother's challenge to part of the juvenile court's jurisdiction findings and (2) whether the removal order must be reversed, either because the court did not state reasons for removing the children or because substantial evidence does not establish removal was warranted.

## I. BACKGROUND

### A.  *Context: Prior Dependency History*

In 2016, the juvenile court sustained two dependency petitions relating to allegations involving I.L., J.L., and C.L. The first sustained petition alleged (among other allegations) that Father had a history of engaging in violent altercations with Mother in the presence of the Minors. The second sustained petition alleged Father, in the presence of some of the Minors, struck Mother's face with his hands and grabbed her arms such that he inflicted marks and bruises on her.

In 2018, the juvenile court sustained a petition as to Ge.O. that alleged Mother and Father had a history of engaging in violent altercations in the presence of Ge.O.'s siblings and those

---

[1]  At the time the dependency petition was filed, I.L. was fourteen years old, J.L. was eleven years old, C.L. was eight years old, Ge.O. was two years old, and Gi.O was three months old.

2

siblings were dependents of the juvenile court due to those violent altercations.

Pursuant to an August 2018 juvenile court order, Mother was granted physical and legal custody of I.L., J.L., and C.L. Supervised visitation was ordered for Father.

### B.    These Dependency Proceedings
#### 1.    The December referral

In December 2019, the Department received a referral alleging C.L. reported mistreatment by Mother. The referring party said Mother pulled C.L.'s fingers back until they hurt, locked C.L. and her younger siblings in a room, walked around the house stating someone was after her, and smoked a white drug in a baggie. The referring party also stated that, according to C.L., Father was residing in the house.

A Department social worker began investigating the family's welfare and spoke to C.L. at her school. C.L. said Father lives in the home with Mother and her siblings and the maternal grandmother usually takes care of C.L. because Mother does not. Mother would scream at C.L. and make her feel bad, Mother pulled C.L.'s finger back causing it to hurt on one occasion, and Mother had tackled C.L. to the floor on another occasion. C.L. also told the social worker that Mother smokes a glass pipe and uses drugs in the restroom and becomes more violent after doing so. C.L. further revealed Mother would at times say people are following them.

The social worker visited the family's home. Mother was not there, but the social worker was able to speak to J.L. Shortly after they began talking, the social worker was informed Mother was on the phone and wanted to speak to her. Mother screamed and cursed at the social worker, saying she did not want the worker to speak to her children and she was on her way home; Mother also accused the social worker of violating her (Mother's) rights. After the call ended, J.L. told the social worker to ignore

3

Mother, explaining she always acts that way. The social worker waited for Mother, and when she arrived, she began screaming at the social worker and stated she did not believe the social worker was with the Department.

After the home visit, a Department social worker spoke to the Minors' adult sibling C.S., who reported she had many concerns about Mother. The Minors called C.S. on occasion and told her Mother was acting irrationally. They reported Mother once locked them in the bedroom because she said there was someone following her. J.L. and C.L. had also called C.S. asking for food because Mother refused to let them leave the home. C.S. believed Mother had mental health problems and might be using drugs.

A Department social worker spoke to I.L. alone a few days later. He denied suffering any abuse or neglect, and he denied Mother used drugs or alcohol in the home. He also denied Mother ever locked anyone in a bedroom or claimed someone had been following her. I.L. asserted C.L. made up the allegations because she did not want to follow the house rules. I.L. also stated Father did not live in the home and said he had not seen him in over two months.

### 2.    *Another referral in January*

In early January 2020, the Department received a referral reporting Mother was unstable and had been acting very erratically for a few days. The referring party stated Mother believed the Minors had been kidnapped if they were not home, Mother was not feeding the Minors (they were being fed by other relatives), Mother threatened to duct tape the Minors to a wall, and Mother tried to attack I.L.

4

A Department social worker, accompanied by law enforcement, investigated the referral.[2] When they arrived at Mother's location, Mother refused to be interviewed. She reported the Minors were with a maternal aunt. The social worker later located the Minors, who were with Father.

The social worker interviewed Father and the three oldest Minors. Father denied there was any current domestic violence between him and Mother, and he also denied there had been domestic violence in the past (notwithstanding the findings in the previous dependency cases). Father stated he moved back into the family home in mid-2018, after the prior dependency case closed, and he had since had unlimited contact with the Minors.

Regarding the most recent referral to the Department, Father reported Mother and the Minors had been staying at the maternal grandparents home to housesit.[3] I.L. called Father to say Mother was screaming and yelling, and I.L. asked Father to pick him up. Father did so, and ultimately returned home with all five Minors. Though Father denied mental illness or substance abuse by Mother, he said she had been acting impatient and anxious lately, and he believed it was due to postpartum depression.

I.L. told the social worker that Mother yelled and screamed at him, but she had not used vulgar language or attacked him. According to I.L., Mother had been acting weird, was easily agitated, and was not sleeping full nights, but she was not using drugs and had not threatened to duct tape any of the Minors to a wall. J.L. reported Mother had become angry at J.L. for placing her sister Gi.O. in the bedroom rather than in the living room as

---

[2] Law enforcement informed the social worker there was an active restraining order, set to expire in February 2020, which protected Mother from Father.

[3] The maternal grandparents were out of town on a trip, but they returned not long after these interviews.

5

instructed.  J.L. said Mother called the police to say the Minors were not listening to her; the police responded, checked the Minors, and left.  C.L. said Mother had been acting weird for the past few days, and had screamed and yelled at I.L. and J.L., but she had not been physically aggressive.  C.L. stated she chose to go home with Father when he arrived in response to I.L.'s call because she did not feel comfortable staying with Mother due to her strange behavior.  C.L. said she wanted to remain living with Mother, but she felt safer with Father.

A Department social worker later spoke with Montebello police officers, who reported they visited the home twice because Mother reported the Minors were being disrespectful.  When an officer spoke to the Minors, they said Mother had been yelling at them and threatening them, and they also stated they had found and disposed of a cylinder glass pipe with a bulb end.  The maternal aunt told the officers Mother had been paranoid the night before, had not slept, and had woken infant Gi.O. up when Gi.O. fell asleep.

### 3.    *A second January referral*

The next day, Department social workers responded to the maternal grandparents' home to investigate an immediate response referral.  When the social workers arrived, Mother had already been detained by Montebello police.  The police told the social workers they responded to a disturbance call prompted by Mother talking to herself and yelling all morning.  Once on the scene, police officers found Mother had barricaded herself in the bathroom and she refused to open the door because she believed the police were going to kill and rape her.  The officers gained entry into the bathroom and took Mother into custody.  She was ultimately hospitalized.

C.S. (Mother's adult daughter) told Department personnel that Mother had been acting bizarrely for a few days, locking herself in the restroom with a bag she carried around and

6

breaking security cameras in the maternal grandparents' home. Mother also sent text messages to C.S. alleging C.S. had kidnapped sibling I.L. When C.S. arrived at the maternal grandparents' home, Mother had already barricaded herself inside the bathroom. The glass in a bathroom window had been broken, and Mother was screaming and punching the window screen, yelling "fuck off," and "you're not my real kids, I want my real kids back." C.S. additionally revealed the Minors were afraid of going back into foster care and had been denying allegations when interviewed by social workers as a result.

Approximately one week later, after Mother was released from the hospital, Department social workers detained the Minors.

### 4.    *The dependency petition*

The Department filed a six-count dependency petition in January 2020 alleging counts under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j).[4]

Counts a-1, b-2, and j-1 alleged Mother had physically abused C.L. by grabbing her hand and pulling her finger back, and by tackling C.L. to the ground. They alleged C.L. was afraid of Mother, Father knew or should have known of the abuse, and Father failed to take action to protect C.L. The counts also alleged the abuse of C.L. endangered her and the other Minors.

Count b-1 alleged Mother had mental and emotional problems that placed the Minors at substantial risk of suffering serious physical harm. Count b-1 described certain specific incidents, including Mother barricading herself in the restroom, yelling that law enforcement was going to kill and rape her, threatening to duct tape some of the Minors, threatening to kill C.S., displaying paranoia and pacing back and forth, locking

---

[4]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

herself and the Minors in a room and stating someone was following them, breaking the maternal grandparents' security cameras, and being hospitalized for evaluation of her mental and emotional problems.

Count b-3 alleged Mother created an endangering and detrimental home environment by possessing drug paraphernalia that was accessible to the Minors, and Father failed to protect the Minors from the danger. Count b-4 similarly alleged an endangering home environment as a result of Mother's decision to allow Father to reside in the home and have unlimited access to the Minors when she knew he would be violating the existing restraining order and was only supposed to have monitored visits due to his noncompliance with prior dependency case orders.

### 5. The detention hearing and subsequent interviews

The juvenile court held a detention hearing on January 15, 2020, and ordered the Minors detained, finding there were no reasonable means to protect the children short of removing them from the home. The court ordered the Department to provide the family with services, and to make its best efforts to place the Minors together. The court also ordered separate, monitored visitation for the parents.

Department personnel interviewed the family again prior to the jurisdiction and disposition hearing. The three Minors who were old enough to articulate a preference said they wanted to go back to living with Mother. They largely denied the substance of the dependency allegations or stated they did not remember events related to those allegations (even allegations they previously corroborated). The Minors did, however, reconfirm certain aspects of the allegations. I.L. admitted Mother yelled at him and C.S., saying they were not her kids. J.L. acknowledged that Mother said she would duct tape C.L., but J.L. also said Mother says many things to C.L. to make her behave. C.L. said

8

she had seen Mother pacing back and forth. All three Minors said they did not feel they were in danger with Mother or Father.

Mother denied the substance of the allegations against her. She denied grabbing C.L.'s finger and pulling it back, and she also denied tackling C.L. Mother allowed she might have been feeling overwhelmed or experiencing postpartum depression at the time Minors were detained, but she denied exhibiting erratic, paranoid, or threatening behavior.[5] Mother also denied yelling at the Minors, being uncooperative, telling the police they were going to rape or kill her, threatening her children, and barricading herself in the bathroom.

By late February 2020, Mother was participating in anger management courses, parenting education, and on demand drug testing. Mother tested negative six times and failed to appear for three tests. Mother was also participating in individual counseling, was to be referred to a psychiatrist, and was to be evaluated to determine if she needed medication.

### 6. *The jurisdiction and disposition hearing*

At the jurisdiction and disposition hearing, the juvenile court amended the petition by interlineation to change the allegation regarding Mother's mental health in count b-1 to reflect her diagnosis for adjustment disorder (and to strike the allegation in count b-3 that Father knew or should have known of Mother's drug use and had failed to protect the Minors from it). As amended, the court sustained counts b-1 and b-3 against Mother and struck Father from count b-3. The court sustained the remaining counts as pled.

---

[5] In February 2020, Mother was diagnosed with adjustment disorder. The document identifying her diagnosis asked her to follow up with a referral to a mental health center. Mother was also diagnosed with postpartum depression.

The court also ordered the Minors removed from their parents' custody. The court stated on the record that it was removing the Minors for the reasons set out in the Department's reporting, but the court did not elaborate, and no one objected.[6] The minute order memorializing the hearing recited (using boilerplate language) that removal was necessary because there was a substantial danger to the Minors' physical health, safety, protection, or physical or emotional well-being, and there were no reasonable means to protect the Minors' physical health short of removal. I.L. was placed with maternal grandparents, and the other Minors were placed together with a paternal great aunt and uncle.

## II. DISCUSSION

Mother challenges the propriety of only two of the sustained jurisdiction findings: those made under section 300, subdivisions (a)(1) and (j) that stemmed from the allegation that Mother physically abused C.L. She does not challenge the subdivision (b) findings against her, including the finding based on the same facts of physical abuse, nor does Mother challenge the sustained findings against Father. Following settled law, we need not and will not resolve Mother's contentions in light of the unchallenged findings supporting jurisdiction over the Minors.

As for removal of the Minors, Mother forfeited her procedural argument challenging the absence of a more detailed recitation of the juvenile court's reasons for its removal order by not making a contemporaneous objection on that ground below. Her challenge to the sufficiency of the evidence supporting removal also fails because her unresolved and unacknowledged

---

[6]    At the close of the hearing, Mother's attorney did make a generic objection to the orders made by the juvenile court. There was no specific objection, however, that the court did not sufficiently state its findings and reasons for removal.

mental health issues, especially when coupled with her (and Father's) prior noncompliance with juvenile court orders, are strong evidence supporting the order for removal.

### A. Mother's Challenge to Only Part of the Basis for Assuming Jurisdiction Is Unavailing

"As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings." (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; see also *In re I.J.* (2013) 56 Cal.4th 766, 773 ["'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence'"].)

That is the scenario we confront here. The juvenile court sustained three counts based on Mother's alleged acts of physical abuse toward C.L. Mother challenges the court's decision as to two of those counts (a-1 and j-1), but not the third (b-1). Nor does she challenge other findings that independently support jurisdiction over the Minors based on her behavior (i.e., her mental and emotional problems, her possession of drug paraphernalia that was accessible to the Minors, and her decision to allow Father to reside in the home and have unlimited access to the Minors despite court orders prohibiting that). Mother also does not challenge the sustained jurisdiction findings against Father. With the unchallenged findings serving as valid bases for jurisdiction, we need not consider Mother's attack on the true findings with respect to petition counts a-1 and j-1.

11

Mother argues we should nonetheless exercise our discretion to reach the correctness of those findings because, she believes, a finding under subdivision (a) is more serious and carries more stigma than one under subdivision (b), because the erroneous findings could adversely affect Mother in possible future dependency proceedings, and because it is more than reasonably probable the subdivision (a) count was the basis for the removal order. None of these points is persuasive.

Mother's first two contentions are speculative, as she does not demonstrate any way in which the challenged findings would prejudice her in light of the unchallenged findings. This is particularly true because juvenile court sustained a subdivision (b) allegation against Mother based on the very same allegations that undergird the subdivision (a) finding. In addition, as to Mother's third contention, the subdivision (b) findings alone constitute substantial evidence in support of the order as we explain in more detail, *post*.

> B. *There Is No Reason to Reverse the Removal Order*
>> 1. *Mother forfeited her argument regarding the absence of a detailed explanation of the reasons for removal*

The juvenile court found it was reasonable and necessary to remove the Minors from Mother, but it did not recite for the record (or in writing) the specific reasons for its decision. Such a recitation is required by section 361, subdivision (e). Mother did not object below to the absence of a statement of reasons, however, and as a result, her argument on appeal is forfeited.[7]

---

[7] Mother's generic objection at the end of the jurisdiction and disposition hearing was not sufficient to preserve the specific point raised on appeal, but even if it were, that would not change the outcome of this appeal. A juvenile court's failure to make such findings "will be deemed harmless where 'it is not reasonably probable such finding, if made, would have been in

12

(*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re S.C.* (2006) 138 Cal.App.4th 396, 406.)

       2.    *Substantial evidence supports the removal order*

A juvenile court may remove a child from the custody of a parent with whom the child was living at the time the petition was filed if the court "finds clear and convincing evidence" that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) Removal may be ordered without evidence the child has already suffered harm, and "'[t]he court may consider a parent's past conduct as well as present circumstances'" in making its decision. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451, citations omitted, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) We review a removal order for substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154; see also *Conservatorship of O.B.*, *supra*, at 1011.)

_____

favor of continued parental custody.'" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218.) For the reasons we next describe, strong evidence supports the removal finding and it is not reasonably probable the juvenile court would have reached a different result had it stated its reasons for removal on the record.

Substantial evidence supports the juvenile court's removal order here. Less than two months had passed between the January incident that caused Mother to be admitted to a hospital for mental health problems and the disposition hearing. According to the Minors (at least in their early Department interviews) and other family members, Mother's concerning behavior was not an isolated occurrence. Rather, it started months before and continued to escalate until the January incident that led to her hospitalization. Mother also had yet to meaningfully begin treatment for the adjustment disorder and postpartum depression she was diagnosed with during the time between the Minors' initial detention and the disposition hearing.

Just as important, Mother denied her behavior leading to the initial removal of the Minors ever occurred. Though Mother was taken into custody by the police and hospitalized in early January, she nonetheless asserted it never happened. Mother also stated she did not believe she had mental or emotional problems; she claimed she was just overwhelmed. Mother's refusal to acknowledge her mental health issues, coupled with the limited progress she had made in addressing them posed a substantial danger to Minors if they were returned home at the time of the disposition hearing.

If that were not enough, Mother also denied and minimized the import of her and Father's violation of prior juvenile court orders, which included a restraining order protecting Mother from Father and an order providing Father was not to have unmonitored visits with Minors. Though the record clearly reflects Father was alone with Minors at various points, Mother claimed that was never the case. Mother also stated she did not know she had a restraining order against Father.

Mother's counterarguments contesting the sufficiency of the evidence are not persuasive. Mother made appointments for further mental health consultations, but there is no evidence she made enough progress in addressing her mental health issues

14

that the Minors could safely be returned to her care. Mother's contention that Father could have been ordered to stay away from the home ignores the fact that she and Father previously violated similar court orders and her denial that those violations occurred. The juvenile court could reasonably conclude the availability of maternal relatives to monitor the family's welfare would not be sufficient to protect the Minors because none of those relatives would be living in the home with them and many of those relatives had been involved (and previously unable to protect the Minors) when the issues that led to dependency jurisdiction arose. Finally, Mother's argument that the older Minors could safely be placed with her because they were verbal and could seek assistance fails to recognize the danger her prior actions posed to the older Minors (including locking some of the Minors in a room with her, without food) and ignores their understandable reluctance to speak out against Mother, as evidenced by their shifting reports on what had occurred.

There is accordingly ample evidence supporting the juvenile court's removal order.

DISPOSITION

The juvenile court's orders are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



MOOR, J.